## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BRAD JONES, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> HFF, INC., MARK D. GIBSON, JODY B. THORNTON JR., DEBORAH H. MCANENY, GEORGE L. MILES JR., STEVEN E. WHEELER, MORGAN K. O'BRIEN, SUSAN P. MCGALLA, and LENORE M. SULLIVAN, <br><br> Defendants. | Case No. <br><br> **CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934** <br><br> **JURY TRIAL DEMANDED** |

Plaintiff Brad Jones ("Plaintiff"), by his undersigned attorneys, alleges upon personal knowledge with respect to himself, and information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1.     This action is brought as a class action by Plaintiff on behalf of himself and the other public holders of the common stock of HFF, Inc. ("HFF" or the "Company") against the Company and the members of the Company's board of directors (collectively, the "Board" or "Individual Defendants," and, together with HFF, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), SEC Rule 14a-9, 17 C.F.R. 240.14a-9, and Regulation G, 17 C.F.R. § 244.100, in connection with the proposed merger (the "Proposed Merger") between HFF and Jones Lang LaSalle Incorporated ("JLL").

2.     On March 19, 2019, the Board caused the Company to enter into an agreement and plan of merger ("Merger Agreement"), pursuant to which the Company's shareholders stand to receive $24.63 in cash and 0.1505 shares of common stock of JLL for each share of HFF stock

they own (the "Merger Consideration").  Upon completion of the merger, JLL stockholders will own 87 percent and HFF stockholders will own 13 percent of the combined company.

3.      On April 29, 2019, in order to convince HFF shareholders to vote in favor of the Proposed Merger, the Board authorized the filing of a materially incomplete and misleading Form S-4 Registration Statement (the "S-4") with the Securities and Exchange Commission ("SEC"), in violation of Sections 14(a) and 20(a) of the Exchange Act.  The materially incomplete and misleading S-4 violates both Regulation G (17 C.F.R. § 244.100) and SEC Rule 14a-9 (17 C.F.R. 240.14a-9), each of which constitutes a violation of Section 14(a) and 20(a) of the Exchange Act.

4.      While touting the fairness of the Merger Consideration to the Company's shareholders in the S-4, Defendants have failed to disclose certain material information that is necessary for shareholders to properly assess the fairness of the Proposed Merger, thereby violating SEC rules and regulations and rendering certain statements in the S-4 materially incomplete and misleading.

5.      In particular, the S-4 contains materially incomplete and misleading information concerning the financial projections for the Company that were prepared by the Company and relied on by Defendants in recommending that HFF shareholders vote in favor of the Proposed Merger.  The financial projections were also utilized by HFF's financial advisor, Morgan Stanley & Co. LLC. ("Morgan Stanley"), in conducting certain valuation analyses in support of its fairness opinion.

6.      It is imperative that the material information that has been omitted from the S-4 is disclosed prior to the forthcoming vote to allow the Company's shareholders to make an informed decision regarding the Proposed Merger.

7.      For these reasons, and as set forth in detail herein, Plaintiff asserts claims against

Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act, based on Defendants' violation of (i) Regulation G (17 C.F.R. § 244.100) and (ii) Rule 14a-9 (17 C.F.R. 240.14a-9). Plaintiff seeks to enjoin Defendants from holding the shareholders vote on the Proposed Merger and taking any steps to consummate the Proposed Merger unless, and until, the material information discussed below is disclosed to HFF shareholders sufficiently in advance of the vote on the Proposed Merger or, in the event the Proposed Merger is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act.

9.      Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

10.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because HFF is incorporated in this District.

## PARTIES

11.     Plaintiff is, and at all relevant times has been, a holder of HFF common stock.

12.     Defendant HFF is incorporated in Delaware and maintains its principal executive offices at One Victory Park, 2323 Victory Avenue, Suite 1200, Dallas, Texas 75219.  The Company's common stock trades on the NYSE under the ticker symbol "HF."

13.     Individual Defendant Mark D. Gibson is HFF's Co-Founder, Chief Executive Officer and Vice Chairman and has been a director of HFF at all relevant times.

14.     Individual Defendant Jody B. Thornton Jr. is HFF's Co-Founder, President, and Vice Chairman and has been a director of HFF since November 2006.

15.     Individual Defendant Deborah H. McAneny has been a director of HFF at all relevant times.

16.     Individual Defendant George L. Miles Jr. has been a director of HFF since January 2007.

17.     Individual Defendant Steven E. Wheeler has been a director of HFF since March 2010.

18.     Individual Defendant Morgan K. O'Brien has been a director of HFF since November 2012.

19.     Individual Defendant Susan P. McGalla has been a director of HFF since October 2009.

20.     Individual Defendant Lenore M. Sullivan has been a director of HFF since January 2007.

21.     The Individual Defendants referred to in paragraphs 13-20 are collectively referred to herein as the "Individual Defendants" and/or the "Board."

## CLASS ACTION ALLEGATIONS

22.     Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and the other public shareholders of HFF (the "Class"). Excluded from the Class are Defendants

herein and any person, firm, trust, corporation, or other entity related to or affiliated with any Defendant.

23.     This action is properly maintainable as a class action because:

a.     The Class is so numerous that joinder of all members is impracticable.  As of April 18, 2019, there were approximately 40,000,000 shares of HFF common stock outstanding, held by hundreds of individuals and entities scattered throughout the country. The actual number of public shareholders of HFF will be ascertained through discovery;

b.     There are questions of law and fact that are common to the Class that predominate over any questions affecting only individual members, including the following:

i)     whether Defendants disclosed material information that includes non-GAAP financial measures without providing a reconciliation of the same non-GAAP financial measures to their most directly comparable GAAP equivalent in violation of Section 14(a) of the Exchange Act;

ii)     whether Defendants have misrepresented or omitted material information concerning the Proposed Merger in the S-4 in violation of Section 14(a) of the Exchange Act;

iii)     whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

iv)     whether Plaintiff and other members of the Class will suffer irreparable harm if compelled to vote their shares regarding the

Proposed Merger based on the materially incomplete and misleading S-4.

c.      Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class;

d.      Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

e.      The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for the party opposing the Class;

f.      Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole; and

g.      A class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

## SUBSTANTIVE ALLEGATIONS

### I.      The Proposed Merger

24.     HFF is a provider of commercial real estate and capital markets services to both consumers and providers of capital in the commercial real estate industry and is one of the largest full-service commercial real estate financial intermediaries in the country. Some of the services the Company provides includes debt placement; investment advisory; distressed debt and real

estate owned advisory services; equity placement; investment banking and advisory services; loan

sales; and commercial loan servicing.

25.     On March 19, 2019, HFF and JLL issued a joint press release announcing the

Proposed Merger, which states in pertinent part:

> CHICAGO and DALLAS, March 19, 2019 /PRNewswire/ -- Jones Lang LaSalle Incorporated (NYSE: JLL) and HFF, Inc. (NYSE: HF) today announced that they have entered into a definitive agreement under which JLL will acquire all the outstanding shares of HFF in a cash and stock transaction with an equity value of approximately $2 billion. The transaction has been unanimously approved by the boards of directors of both companies.
>
> HFF is one of the largest and most successful commercial real estate capital markets intermediaries in the U.S., marked by decades-long relationships with clients, a talented leadership team and best-in-class capital markets advisors. Since 1998, HFF has closed more than $800 billion in over 27,000 transactions, achieving record revenue in 2018 of more than $650 million. Mark Gibson, CEO of HFF, will join JLL as CEO, Capital Markets, Americas and Co-Chair of its Global Capital Markets Board.
>
> "Increasing the scale of our Capital Markets business is one of the key priorities in our Beyond strategic vision to drive long-term sustainable and profitable growth. The combination with HFF provides a unique opportunity to accelerate growth and establish JLL as a leading capital markets intermediary, with outstanding capabilities," said Christian Ulbrich, Global CEO of JLL. "We have long admired HFF for its expertise and leading reputation in the industry, as well as its client-first culture of teamwork, ethics and excellence, which aligns with our own. I believe that combining our organizations will deliver a range of compelling benefits for our clients, employees and shareholders."
>
> "This is a terrific transaction for our shareholders, providing them with an immediate cash payment and the opportunity to participate in the long-term value of the combined company," said Gibson. "In addition, we believe the combination with JLL will create a superior platform for our shareholders, clients and employees than either company would have independent of the other and will significantly accelerate our firm's strategic plan. JLL's team-oriented culture with the additional standards of high character and integrity are an excellent match with the HFF culture, which has been HFF's fundamental differentiator since its inception."
>
> **Transaction Details**
>
> Under the terms of the agreement, HFF shareholders will receive $24.63 in cash and 0.1505 JLL shares for each HFF share. Based on the closing price of JLL stock of $163.02 on March 18, 2019, the cash and stock consideration to be received by

HFF shareholders at closing is valued at $49.16 per HFF share. The share price represents a premium of approximately 22 percent and 25 percent compared to the volume weighted average price of HFF over 60 and 90 trading days, respectively, and a premium of approximately 6 percent over the closing stock price on March 18, 2019(before the positive impact of the $1.75 per share special dividend declared on January 31, 2019 and paid on February 27, 2019). Upon closing of the transaction, JLL shareholders are expected to own approximately 87 percent of the combined company, and HFF shareholders are expected to own approximately 13 percent. All seven Executive Committee members of HFF have agreed to vote their shares, representing 3 percent ownership of HFF, in favor of the transaction. Key HFF senior leaders and capital markets advisors have entered into 3-4 year commitments related to employment, non-competition and/or retention. Finally, JLL anticipates adding one of HFF's existing directors to JLL's Board of Directors effective as of the closing of the transaction.

JLL intends to fund the cash portion of the purchase price consideration with a combination of cash reserves and its existing syndicated credit facility. The combination is expected to deliver significant run-rate synergies, estimated at approximately $60 million over two to three years.

The transaction is expected to close in the third quarter of 2019, subject to HFF shareholder approval and customary closing conditions, including regulatory review. The transaction is not contingent upon receipt of financing.

**Compelling Strategic Rationale and Long-Term Value Creation**

Through this combination, JLL will significantly bolster its full-service Capital Markets services to clients. The transaction will allow JLL to rapidly scale its U.S. Capital Markets presence, accelerate growth of its debt advisory business in Europeand Asia Pacific and drive increased operating efficiency globally.
HFF shareholders will receive attractive value for their HFF shares, combining an immediate cash element with the opportunity to participate in the future success and high growth potential of JLL. HFF shareholders will benefit from owning shares in a global organization with a variety of additional services to offer clients, including industry-leading agency leasing, property management, valuations and project management services.

The combination of JLL and HFF will create a platform that attracts, develops and retains the best talent in the industry. Additionally, the combination of the companies' complementary investments in technology will further strengthen JLL's digital capabilities, reinforcing its position as a digital leader with superior team connectivity, improved back-end processes and best-in-class client tools.
This acquisition is expected to create long-term strategic value for both JLL and HFF investors. It will be accretive to adjusted earnings per share in the first full financial year after completion and generate strong pro forma cash flow, allowing for consistent and timely deleveraging.

**Advisors**

JP Morgan is serving as exclusive financial advisor for JLL, and Sidley Austin LLP as legal counsel. Morgan Stanley & Co. LLC is acting as exclusive financial advisor for HFF, and Dechert LLP as legal counsel.

**Webcast**

Management will offer a live webcast for shareholders, analysts and investment professionals at 10:00 AM Eastern Time. The link to the webcast can be accessed at the JLL Investor Relations website: ir.jll.com.

**Conference Call Details**

Management will also conduct a conference call. If you are unable to join the live webcast and would like to participate in the teleconference, please dial into one of the following phone numbers five to ten minutes before the start time (the conference ID will be required):
United States callers: +1 877 701 6182
International callers: +1 647 689 5462
Conference ID: 1858889

**About JLL**

JLL (NYSE: JLL) is a leading professional services firm that specializes in real estate and investment management. Our vision is to reimagine the world of real estate, creating rewarding opportunities and amazing spaces where people can achieve their ambitions. In doing so, we will build a better tomorrow for our clients, our people and our communities. JLL is a Fortune 500 company with annual revenue of $16.3 billion, operations in over 80 countries and a global workforce of over 90,000 as of December 31, 2018. JLL is the brand name, and a registered trademark, of Jones Lang LaSalle Incorporated. For further information, visit jll.com

**About HFF**

Through its subsidiaries, Holliday Fenoglio Fowler, L.P., HFF Real Estate Limited, HFF Securities L.P. and HFF Securities Limited, HFF operates out of 26 offices and is one of the leading and largest full-service commercial real estate financial intermediaries, providing commercial real estate and capital markets services to both the consumers and providers of capital in the commercial real estate sector. HFF offers clients a fully-integrated capital markets platform including debt placement, investment advisory, equity placement, funds marketing, M&A and corporate advisory, loan sales and commercial loan servicing.

26.     HFF is well-positioned for financial growth and the Merger Consideration fails to adequately compensate the Company's shareholders.  It is imperative that Defendants disclose the material information they have omitted from the S-4, discussed in detail below, so that the Company's shareholders can properly assess the fairness of the Merger Consideration for themselves and make an informed decision concerning whether or not to vote in favor of the Proposed Merger.

## II.     The Materially Incomplete and Misleading S-4

27.     On April 29, 2019, Defendants caused the S-4 to be filed with the SEC in connection with the Proposed Merger.  The S-4 solicits the Company's shareholders to vote in favor of the Proposed Merger.  Defendants were obligated to carefully review the S-4 before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions.  However, the S-4 misrepresents and/or omits material information that is necessary for the Company's shareholders to make an informed decision concerning whether to vote in favor of the Proposed Merger, in violation of Sections 14(a) and 20(a) of the Exchange Act.

### *The Materially Misleading Sales Process*

28.     Defendants began discussion with JLL in August 2018 to enter into a strategic transaction.  While the companies negotiated a sales transaction, the Company made no effort to contact any other potential bidders or otherwise instruct any representative to solicit bids for the Company. On March 8, 2019 and March 12, 2019, the Company received unsolicited contact from Party A and Party B, respectively. S-4 56-57. Other than the initial contact, no further contact was made by the Company. *Id.* Part of the reason the Company was interested in the transaction with JLL was because of purported potential synergies that could be recognized through the Proposed Merger. *Id.* at 49. In fact, on February 9, 2019, the Board rejected one of JLL's offers because the

Board felt JLL was not adequately valuing the potential synergies. *Id.* at 53. Moreover, On March 15, 2019, the Board in part decided to not contact Party B because the Board felt that it would be difficult for a transaction with Party B to achieve synergies. *Id.* at 58.

29.     The Board discussed with Morgan Stanley their opinion that an offer from anyone outside certain strategic peers would be unlikely considering the inability to derive significant cost synergies from the transaction. *Id.* at 50.  Despite touting the value of the synergies to be obtained in a merger with JLL, the S-4 is silent as to what the synergies are or the estimated value of the synergies. Additionally, the S-4 does not address why HFF did not engage in any efforts to determine if other entities in the industry could offer similar synergies through a merger and might be interested in a business combination. The failure to provide a reason for the lack of solicitation, or at the very least the estimated synergy values, is misleading because it appears that HFF favored entering into a transaction with JLL rather than maximizing shareholder value.

30.     In the event HFF consummated the Proposed Merger with JLL, certain key employees of HFF would be hired into executive roles in the post-merger company. *Id.* at 52.

### *The Materially Misleading Financial Analyses*

31.     On April 29, 2019, Defendants caused the S-4 to be filed with the SEC in connection with the Proposed Merger.  The S-4 solicits the Company's shareholders to vote in favor of the Proposed Merger.  Defendants were obligated to carefully review the S-4 before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions.  However, the S-4 misrepresents and/or omits material information that is necessary for the Company's shareholders to make an informed decision concerning whether to vote in favor of the Proposed Merger, in violation of Sections 14(a) and 20(a) of the Exchange Act.

***Financial Projections that Violate Regulation G and SEC Rule 14a-9***

32.     The S-4 fails to provide material information concerning the Company's financial projections, which were developed by the Company's management and relied upon by the Board in recommending that the shareholders vote in favor of the Proposed Merger. *Id.* at 65.

33.     Certain of the financial projections that were prepared by HFF management also were relied upon by the Company's financial advisor, Morgan Stanley, in connection with its valuation analyses and fairness opinion.  *Id.* at 67.

34.     Specifically, the S-4 discloses values for projected non-GAAP (Generally Accepted Accounting Principles) financial metrics for 2019 (the "Financial Projections") for:  (1) EBITDA and (2) Adjusted EBITDA but fails to provide (i) the line items used to calculate these non-GAAP metrics or (ii) a reconciliation of these non-GAAP projections to the most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).  *Id.* at 165.

35.     The Company defines "EBITDA," a non-GAAP financial measure, as income before income taxes plus interest expense and depreciation and amortization. *Id.* at 165 n.2. However, the S-4 fails to provide the values for interest expense and depreciation and amortization and fails to reconcile EBITDA to its most comparable GAAP equivalent.  *Id.* at 165. This omitted information is material because it was used to calculate and project critical projected financial measures utilized by the Board and Morgan Stanley to recommend the unfair Merger Consideration, and its omission renders the Board's recommendation, the projected financials, Morgan Stanley's valuations and the Merger Consideration misleading.

36.      Additionally, the Company defines "Adjusted EBITDA," a non-GAAP financial measure, as "EBITDA adjusted to exclude stock-based compensation expense, which is a non-cash charge, the initial recording of mortgage servicing rights that are acquired with no initial consideration and the inherent value of servicing rights, which are non-cash income amounts and

increases or decreases in the payable under the tax receivable agreement, which represent changes in a liability recorded on HFF's consolidated balance sheet determined by the ongoing remeasurement of related deferred tax assets and, therefore can be income or expense in HFF's consolidated statement of income in any individual period." *Id.* at 165-66 n.3. However, the S-4 fails to provide the values of any of these line items and fails to reconcile Adjusted EBITDA to its most comparable GAAP equivalent. *Id.* at 165. This omitted information is material because it was used to calculate and project critical projected financial measures utilized by the Board and Morgan Stanley to recommend the unfair Merger Consideration, and its omission renders the Board's recommendation, the projected financials, Morgan Stanley's valuations and the Merger Consideration misleading.

37.     When a company discloses non-GAAP financial measures in a registration statement that were relied on by a board of directors to recommend that shareholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP.  17 C.F.R. § 244.100.

38.     Indeed, the SEC has increased its scrutiny of the use of non-GAAP financial measures in communications with shareholders.  Former SEC Chairwoman Mary Jo White has stated that the frequent use by publicly traded companies of unique, company-specific non-GAAP financial measures (as HFF included in the S-4 here), implicates the centerpiece of the SEC's disclosures regime:

In too many cases, the non-GAAP information, which is meant to supplement the GAAP information, has become the key message to investors, crowding out and effectively supplanting the GAAP presentation. Jim Schnurr, our Chief Accountant, Mark Kronforst, our Chief Accountant in the Division of Corporation Finance and I, along with other members of the staff, have spoken out frequently about our concerns to raise the awareness of boards, management and investors. And last month, the staff issued guidance addressing a number of troublesome practices *which can make non-GAAP disclosures misleading*: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data. I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures. I also urge again, as I did last December, that appropriate controls be considered and that audit committees carefully oversee their company's use of non-GAAP measures and disclosures.[1]

39.     Thus, in order to bring the S-4 into compliance with Regulation G as well as cure the materially misleading nature of the projections under SEC Rule 14a-9 as a result of the omitted information, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures and/or disclose the line item projections for the financial metrics that were used to calculate the aforementioned non-GAAP measures. Such projections are necessary to make the non-GAAP projections included in the S-4 not misleading.

### The Materially Misleading Financial Analyses

40.     Certain of the financial projections were relied upon by the Company's financial advisor, Morgan Stanley, in connection with its valuation analyses and fairness opinion. S-4 67. The opacity concerning the Company's internal projections renders the valuation analyses described below materially incomplete and misleading, particularly as companies formulate non-

---

[1]     Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html (emphasis added) (footnotes omitted) (last visited May 6, 2019).

GAAP metrics differently. Once a registration statement discloses internal projections relied upon by the Board, those projections must be complete and accurate.

41.     With respect to Morgan Stanley's *Comparable Companies Analysis*, it appears that Morgan Stanley was extremely conservative in its valuation thereby decreasing the Company's value. Morgan Stanley selected eight comparable companies and determined their estimated price to earnings for calendar years 2019 ("CY2019E P/E") and 2020 ("CY2020E P/E") and determined the ratio of the aggregate value to Adjusted EBITDA for calendar years 2019 ("CY2019E AV/Adjusted EBITDA") and 2020 ("CY2020E AV/Adjusted EBITDA"). *Id.* at 70. J.P. Morgan defined aggregate value as "fully-diluted market capitalization plus consolidated and company's share of unconsolidated debt, plus non-controlling interest, plus preferred securities at liquidation preference, less cash and cash equivalents[.]" *Id.* Given Morgan Stanley's selected comparable companies, the calculated mean and median multiples for CY2019E P/E, CY 2020E P/E, CY2019E AV/Adjusted EBITDA, and CY2020E AV/Adjusted EBITDA are 12.23x and 13x, 11.45x and 12.45x, 8.36x and 8.4x, and 7.74x and 7.7x, respectively. Morgan Stanley used multiple ranges of 13.3x – 16.7x, 12.8x – 16.1x, 7.2x – 8.8x and 6.6x – 8.1x for CY2019E P/E, CY 2020E P/E, CY2019E AV/Adjusted EBITDA, and CY2020E AV/Adjusted EBITDA, respectively. *Id.*

42.     One of the companies that Morgan Stanley included in its analysis was Newmark Group Inc. ("Newmark"). Newmark has the lowest multiples in every category and the difference between Newmark and the other seven companies is substantial. When including Newmark as a comparable company, the mean and standard deviation for CY2019E P/E, CY 2020E P/E, CY2019E AV/Adjusted EBITDA, and CY2020E AV/Adjusted EBITDA is 12.23x and 3.4x, 11.45x and 3.3x, 8.36x and 1.67x, and 7.74x and 1.53x, respectively. After normalizing the

*Comparable Companies Analysis* data, Newmark has Z scores of -1.98, -1.89, -2.14 and -1.92 for CY2019E P/E, CY 2020E P/E, CY2019E AV/Adjusted EBITDA, and CY2020E AV/Adjusted EBITDA, respectively.

43.    Newmark's Z scores of -1.98, -1.89, -2.14 and -1.92 for CY2019E P/E, CY 2020E P/E, CY2019E AV/Adjusted EBITDA, and CY2020E AV/Adjusted EBITDA, respectively, demonstrate that at 95% confidence, Newmark is not representative of HFF for CY2019E P/E and CY2019E AV/Adjusted EBITDA. Additionally, at 94% confidence, Newmark is not representative of CY2020E P/E and CY2020E AV/Adjusted EBITDA. Given these p values, it is apparent that Newmark is an outlier and should not be considered a comparable company.

44.    With Newmark removed from the data, the new mean and median for CY2019E P/E, CY 2020E P/E, CY2019E AV/Adjusted EBITDA, and CY2020E AV/Adjusted EBITDA becomes 13.19x and 13.3x, 12.34x and 13x, 8.87x and 8.4x, and 8.16x and 7.8x, respectively. Morgan Stanley did not disclose how it chose the multiple ranges for the Company other than using its "professional judgment and experience," so it is unclear how much consideration this low value was given. *Id.* This is misleading because if Morgan did consider Newmark relevant, then the chosen multiple ranges appear to be very generous as compared to the means and medians. However, when comparing the range to the means and medians without Newmark, the range appears to be conservative.

45.    Additionally, it appears that the earnings per share ("EPS") numbers Morgan Stanley used (with 2019 being derived from management projections and 2020 presumably coming from Wall Street estimates) appear to be too conservative considering the Company's past performance. For 2019 and 2020, Morgan Stanley estimates EPS of $2.86 and $2.88, respectively. According to HFF's 2018 10-K published before Morgan Stanley prepared its fairness opinion,

HFF delivered diluted EPS of $2.88 per share.[2] This was an increase of 20.5% year over year.[3] Given that the 2019 EPS estimate is below the 2018 reported EPS and the 2020 EPS estimate matches the 2018 EPS, it seems that the chosen estimated EPS substantially undervalues the Company. Moreover, the S-4 does not disclose what Morgan Stanley calculated as the aggregate value nor any of the information needed to calculate the aggregate value.

46.    The Company's failure to disclose Morgan Stanley's reliance, if any, on Newmark's multiples, a rationale for why 2019 and 2020 EPS are less than or equal to reported 2018 EPS, Morgan Stanley's calculated aggregate values, and the line items required to calculate the aggregate values is materially misleading. All of the missing information is necessary to fairly evaluate Morgan Stanley's fairness opinion. Without the information, it is unclear if Morgan Stanley has improperly valued the Company or if the valuation is artificially lowered by low multiples and earnings estimates. Therefore, the shareholders are being misled to believe that the Company is worth less than it really is.

47.    With respect to Morgan Stanley's *Discounted Cash Flow Analysis*, the S-4 discloses that Morgan Stanley used the Financial Projections and Wall Street forecasts to perform the discounted cash flow analysis on HFF. S-4 72. First, Morgan Stanley calculated the unlevered free cash flows ("UFCF") of the Company for 2019. *Id.* Morgan Stanley states it calculates UFCF using the Financial Projections' Adjusted EBITDA[4] minus stock-based compensation expense, taxes and capital expenditures. *Id.* Then, Morgan Stanley extrapolated the 2019 UFCF for fiscal

---

[2] HFF, 2018 Annual Report (Form 10-K), p. 20 (Feb. 28, 2019).

[3] *Id.*

[4] Although Morgan Stanley says the Financial Projections' Adjusted EBITDA was used, the definitions do not seem to match completely.

years 2020 through 2023 applying a range of growth rates of 2.3% to 3%. *Id.* Morgan Stanley calculated the terminal value of HFF by applying multiple ranges of 7.3x to 9.3x to the forecasted adjusted EBITDA of HFF for the twelve months ending December 24, 2024. *Id.* Morgan Stanley discounted the UFCF and terminal values using rates ranging from 7.5% to 9.5%, reflecting estimates of the Company's weighted average cost of capital ("WACC") to June 30, 2019. *Id.* Morgan Stanley states that it derived the cost of equity by using the capital asset pricing model. *Id.* Finally, Morgan Stanley derived the implied equity value by adding the cash and deducting the outstanding debt, non-controlling interest and present value of future payments under the Tax Receivable Agreement (estimated as of June 30, 2019) *Id.*

48.     The Company does not provide the information Morgan Stanley utilized in the *Discounted Cash Flow Analysis*. The Company did not disclose the value Morgan Stanley calculated for each year's UFCF, the line items to calculate UFCF, the terminal value, the forecasted 2024 adjusted EBITDA, any of the inputs that went into calculating the Company's WACC, nor the estimated cash, outstanding debt, non-controlling interest and present value of payments under the Tax Receivable Agreement as of June 30, 2019. Since these line items were not disclosed, shareholders are unable to discern the veracity of Morgan Stanley's *Discounted Cash Flow Analysis*. Without further disclosure, shareholders are unable to compare Morgan Stanley's calculations with the Company's financial projections. The absence of any single piece of the above information renders Morgan Stanley's *Discounted Cash Flow Analysis* incomplete and misleading. Thus, the Company's shareholders are being materially misled regarding the value of the Company.

49.     As a highly-respected professor explained in one of the most thorough law review articles regarding the fundamental flaws with the valuation analyses bankers perform in support

of fairness opinions, in a discounted cash flow analysis a banker takes management's projections and then makes several key choices "each of which can significantly affect the final valuation." Steven M. Davidoff, *Fairness Opinions*, 55 Am. U.L. Rev. 1557, 1576 (2006). Such choices include "the appropriate discount rate, and the terminal value . . . ." *Id*. As Professor Davidoff explains:

> There is substantial leeway to determine each of these, and any change can markedly affect the discounted cash flow value . . . . The substantial discretion and lack of guidelines and standards also makes the process vulnerable to manipulation to arrive at the "right" answer for fairness. This raises a further dilemma in light of the conflicted nature of the investment banks who often provide these opinions[.]

*Id.* at 1577-78 (footnotes omitted).

50.     These omissions from the *Discounted Cash Flow Analysis* are all the more misleading because Morgan Stanley chose to discount the cash flows to June 30, 2019, not to March 18, 2019, the day the fairness opinion was rendered. This is materially misleading because the implied equity value is not in the same time period as the Merger Consideration. One cannot accurately measure cash in different periods of time. That is the whole reason to discount. In order to make the implied equity value and the Merger Consideration comparable, either the implied equity value needs to be further discounted or the Merger Consideration needs to be future valued to June 30, 2019. Either way, the presentation of the data is highly misleading. Therefore, in order for HFF shareholders to become fully informed regarding the fairness of the Merger Consideration, the material omitted information must be disclosed to shareholders.

51.     With respect to Morgan Stanley's *Precedent Transactions Analysis*, Morgan Stanley performed both a *Precedent Premiums Paid Analysis* and a *Precedent Multiples Analysis*. For the *Precedent Premiums Paid Analysis*, Morgan Stanley analyzed the premia of four precedent transactions. Morgan Stanley did not disclose any summary statistics about the transactions other than disclosing that the median of the premium paid was 15.9%. *Id.* at 73. Morgan Stanley does

state the selected premium range was based on the observed high and low end of the premiums paid, but that does not mean the selected premium range is equal to the observed premium range. *Id.* at 74. For the *Precedent Multiples Analysis*, Morgan Stanley states it based the selected range of aggregate value to last twelve months EBITDA off of the first and fourth quartile, but once again, that does not mean the numbers are the same. *Id.*

52.     Morgan Stanley has not provided any of the observed multiples for any of the transactions in the *Precedent Transactions Analysis*. This is misleading because a shareholder is unable to verify Morgan Stanley's selection of the multiple ranges nor fully understand where the valuations come from in order to compare Morgan Stanley's valuation with their own independent valuations of the Company. Moreover, Morgan Stanley's *Precedent Premiums Paid Analysis* shows the Merger Consideration is inadequate compared to the precedent transactions. *Id.* Morgan Stanley calculated the implied per share equity to be in the range of $52.59 to $61.22 while the Merger Consideration is only $49.03 (based on the closing price of JLL common stock on March 15, 2019). *Id.* Therefore, the Company must disclose the *Precedent Transactions Analysis* individual multiples, or at the very minimum the mean, median and range, in order to cure the misleading nature of the analysis. The absence of the above information renders Morgan Stanley's *Precedent Transactions Analysis* incomplete and misleading. Thus, the Company's shareholders are being materially misled regarding the value of the Company.

53.     In sum, the S-4 independently violates both (i) Regulation G, which requires a presentation and reconciliation of any non-GAAP financial to their most directly comparable GAAP equivalent, and (ii) Rule 14a-9, since the material omitted information renders certain statements, discussed above, materially incomplete and misleading.  As the S-4 independently contravenes the SEC rules and regulations, Defendants violated Section 14(a) and Section 20(a)

of the Exchange Act by filing the S-4 to garner votes in support of the Proposed Merger from HFF shareholders.

54.     Absent disclosure of the foregoing material information prior to the special shareholder meeting to vote on the Proposed Merger, Plaintiff and the other members of the Class will not be able to make a fully-informed decision regarding whether to vote in favor of the Proposed Merger, and they are thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## COUNT I

**(Against All Defendants for Violations of Section 14(a) of the Exchange Act and 17 C.F.R. § 244.100 Promulgated Thereunder)**

55.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

56.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title."  15 U.S.C. § 78n(a)(1).

57.     As set forth above, the S-4 omits information required by SEC Regulation G, 17 C.F.R. § 244.100, which independently violates Section 14(a).  SEC Regulation G, among other things, requires an issuer that chooses to disclose a non-GAAP measure to provide a presentation of the "most directly comparable" GAAP measure and a reconciliation "by schedule or other

clearly understandable method" of the non-GAAP measure to the "most directly comparable" GAAP measure.  17 C.F.R. § 244.100(a).

58.    The failure to reconcile the non-GAAP financial measures included in the S-4 violates Regulation G and constitutes a violation of Section 14(a).

## COUNT II

**(Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder)**

59.    Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

60.    SEC Rule 14a-9 prohibits the solicitation of shareholder votes in registration statements that contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading[.]" 17 C.F.R. § 240.14a-9(a).

61.    Regulation G similarly prohibits the solicitation of shareholder votes by "mak[ing] public a non-GAAP financial measure that, taken together with the information accompanying that measure . . . contains an untrue statement of a material fact or *omits to state a material fact necessary in order to make the presentation of the non-GAAP financial measure . . . not misleading*."  17 C.F.R. § 244.100(b) (emphasis added).

62.    Defendants have issued the S-4 with the intention of soliciting shareholder support for the Proposed Merger.  Each of the Defendants reviewed and authorized the dissemination of the S-4, which fails to provide critical information regarding, amongst other things, the financial projections for the Company.

63.    In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as directors and/or officers, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the S-4 but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

64.    The Individual Defendants knew or were negligent in not knowing that the S-4 is materially misleading and omits material facts that are necessary to render it not misleading.  The Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Merger.

65.    The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the S-4, rendering the sections of the S-4 identified above to be materially incomplete and misleading.

66.    The Individual Defendants were, at the very least, negligent in preparing and reviewing the S-4.  The preparation of a registration statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  The Individual Defendants were negligent in choosing to omit material information from the S-4 or failing to notice the material omissions in the S-4 upon reviewing it, which they were required to do carefully as the Company's directors.  Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

67.    HFF is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the S-4.

68.    The misrepresentations and omissions in the S-4 are material to Plaintiff and the Class, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Merger.

## COUNT III

**(Against the Individual Defendants for Violations
of Section 20(a) of the Exchange Act)**

69.    Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

70.    The Individual Defendants acted as controlling persons of HFF within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors and/or officers of HFF, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the S-4 filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

71.    Each of the Individual Defendants was provided with or had unlimited access to copies of the S-4 and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

72.    In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act

violations alleged herein and exercised the same. The S-4 at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Merger. They were thus directly involved in preparing the S-4.

73.    In addition, as the S-4 sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The S-4 purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

74.    By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

75.    As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff and the Class will be irreparably harmed.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.    Declaring that this action is properly maintainable as a Class Action and certifying Plaintiff as Class Representative and his counsel as Class Counsel;

B.    Enjoining Defendants and all persons acting in concert with them from proceeding with the shareholder vote on the Proposed Merger or consummating the Proposed Merger, unless and until the Company discloses the material information discussed above which has been omitted from the S-4;

C.    Directing the Defendants to account to Plaintiff and the Class for all damages sustained as a result of their wrongdoing and to award damages arising from proceeding with the Proposed Merger;

D.    Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.    Granting such other and further relief as this Court may deem just and proper.

## <u>JURY DEMAND</u>

Plaintiff demands a trial by jury on all issues so triable.

Dated:  May 6, 2019

**OF COUNSEL:**                                                    Respectfully submitted,

**FARUQI & FARUQI, LLP**                                **FARUQI & FARUQI, LLP**
Nadeem Faruqi
James M. Wilson, Jr.                                       By: */s/ Michael Van Gorder*
685 Third Avenue, 26th Floor                Michael Van Gorder (#6214)
New York, NY 10017                                       3828 Kennett Pike, Suite 201
Tel.: (212) 983-9330                                        Wilmington, DE 19807
Email: nfaruqi@faruqilaw.com                       Tel.: (302) 482-3182
        jwilson@faruqilaw.com                          Email: mvangorder@faruqilaw.com

*Counsel for Plaintiff*                                      *Counsel for Plaintiff*